# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# OCALA DIVISION

|  |  |  |
|---|---|---|
| **JENNIFER MIELKE,** | ) | |
| | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case No.** |
| | ) | |
| | ) | |
| **SUMTER ELECTRIC** | ) | |
| **COOPERATIVE, INC.** | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff, JENNIFER MIELKE (hereinafter "Plaintiff"), by and through the undersigned counsel, hereby sues the Defendant, SUMTER ELECTRIC COOPERATIVE, INC., (hereinafter, "Defendant" or "SECO"), and states as follows:

## INTRODUCTION

1.      This is an action by Plaintiff against Defendant, her former employer, for unpaid overtime wages under the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. § 201, *et seq.* ("FLSA"); for discriminatory retaliation under the Family Medical Leave Act, 29 U.S.C. § 2615 *et seq.* ("FMLA"); and for disability discrimination and retaliation under the Florida Civil Rights Act ("FCRA"), § 760.10(1), *Florida Statutes, et seq.*  Plaintiff seeks all wages due to her under the law, liquidated damages where applicable, compensatory damages, and her reasonable attorney's fee and costs.

## JURISDICTION

2.      This action arises under the FLSA, 29 U.S.C. § 201, *et seq.* and the FMLA, 29 U.S.C. § 2615, *et seq.*  This Court has jurisdiction over claims filed under the FLSA pursuant to 29 U.S.C. § 216(b) and 28 U.S.C. § 1331.

## VENUE

3.      The venue of this Court over this controversy is proper based upon 28 U.S.C. § 1391(b)(1) and (2) as the Defendant is domiciled in and a substantial part of the events or omissions which transpired occurred within Sumter County, Florida, a county within this Court's venue.

## THE PARTIES

4.      Defendant is a Florida corporation with its principal place of business being 330 South U.S. Highway 301, Sumterville, Florida 33585.

5.      Plaintiff was, at all times relevant hereto, an "employee" of the Defendant as that term is defined by 29 U.S.C. § 203(e).

6.      The Defendant was, at all times relevant hereto, Plaintiff's "employer" as that term is defined by 29 U.S.C. § 203(d).

7.      Plaintiff was, at all times relevant to the violations of the FLSA, through the performance of her job duties for Defendant, engaged in commerce as defined by 29 U.S.C. § 203(b).

8.      Defendant is and was, at all times relevant hereto, an enterprise engaged in commerce or in the production of goods for commerce as defined by 29 U.S.C. § 203(s)(1).

9.      Upon information and belief, Defendant, at all times material hereto, had annual gross sales or business of no less than $500,000.00 and was engaged in interstate commerce or in the production of goods for interstate commerce as defined in §§ 3(r) and 3(s) of the FLSA, 29 U.S.C. § 203(r) and § 203(s).

10.     Plaintiff worked at least 12 months for Defendant.

11.     Plaintiff worked at least 1,250 hours within a 12-month period for Defendant.

12.     Defendant employed at least 50 employees within a 75-mile radius of 330 South U.S. Highway 301, Sumterville, Florida 33585.

13.     Defendant was at all times relevant an "employer" as that term is defined in the FMLA, 29 USC § 2611(4).

14.     Plaintiff was at all times an "eligible employee" as that term is defined in the FMLA, 29 U.S.C. § 2611(2).

15.     Plaintiff duel filed EEOC Charge 510-2018-00143 over disability discrimination with the Equal Employment Opportunity Center and the Florida Commission on Human Relations on November 27, 2017.

16.     Plaintiff received an EEOC Right to Sue on June 29, 2018.

17.     Plaintiff did not receive a notice of determination from the FCHR within 180 days of filing.

18.     Plaintiff has complied with all administrative requirements required to bring a charge of discrimination.

19.     Plaintiff has retained the law firm of Wilson McCoy, P.A. to represent her in this matter and has agreed to pay said firm a reasonable attorneys' fee for its services.

## **FACTUAL ALLEGATIONS**

20.     This action arises from a willful misclassification of Plaintiff's position of Communication Specialist as exempt from the overtime requirements of the FLSA, Defendant's deliberate actions to not pay Plaintiff overtime wages, and Defendant's discrimination and termination of Plaintiff for exercising her rights under the FMLA.

21.     Under the provisions of the Fair Labor Standards Act ("FLSA"), employees are required to receive overtime wages at a rate of one and one-half times their regular hourly rate for hours they work in excess of forty during any particular workweek unless they qualify for an exemption under the FLSA.

22.     Defendant is a not-for-profit electric cooperative serving over 200,000 families and businesses across seven counties in Central Florida, making SECO the third largest electric co-op in Florida and the seventh largest in the nation.

23.     Plaintiff began working for Defendant on or about September 2015 when she was hired as a Communication Specialist.

24.     The primary job duty of the Communication Specialist position held by Plaintiff was to liaison with the community via the company websites, advertisements, and social media platforms.

25.     As a Communication Specialist, Plaintiff was responsible for creating images and providing them to management for approval and suggestions.

26.     As a Communication Specialist, Plaintiff was responsible for compiling data and articles provided to her by departments to be used in their department newsletters.

27.     As a Communication Specialist, Plaintiff was responsible for calling vendors to ensure that company projects were being completed per the agreed schedules.

28.     As a Communication Specialist, Plaintiff was responsible for ordering and bundling tradeshow materials such as table cloths, tents, and banners.

29.     As a Communication Specialist, Plaintiff was responsible for the creation of advertisements which followed company standards and requirements for the ad project.

30.     As a Communication Specialist, Plaintiff was responsible for providing guidance to customers trying to navigate the company website.

31.     As a Communication Specialist, Plaintiff was responsible for converting old photos and promotional material to a digital format.

32.     As a Communication Specialist, Plaintiff was responsible for organizing files on the file server.

33.     As a Communication Specialist, Plaintiff was responsible for answering phones and social media inquries.

34.     As a Communication Specialist, Plaintiff was responsible for updating the website and social media with power outage and weather reports.

35.     As a Communication Specialist, Plaintiff was responsible for responding to customers who utilized social media and the website as directed by management.

36.     As a Communication Specialist, Plaintiff was responsible for communicating with the dispatch team in regard to reported outages and posting updated times of repairs.

37.     As a Communication Specialist, Plaintiff was permitted and required to work remotely from her home while working for Defendant.

38.     Plaintiff regularly and customarily performed her primary job duties as a Communication Specialist from her home in Florida while away from the office.

39.     Plaintiff was issued a company laptop, cellphone, and tablet so that she could work remotely from her home.

40.     At all times material to this Complaint, Plaintiff duties as a Communication Specialist for Defendant should have remained the same.

41.     Plaintiff's job duties were changed after she asked for and received FMLA.

42.     At all times material hereto, Plaintiff was paid by Defendant on a salary basis.

43.     In 2015, Plaintiff was paid an annual base salary of $59,000.00 per year by Defendant.

44.     In 2016, Plaintiff was paid an annual base salary of $59,000.00 per year by Defendant.

45.     From January 1, 2017 until March 21, 2017, Plaintiff was paid an annual base salary of $59,000.00 per year by Defendant.

46.     From March 22, 2017 until December 12, 2017, Plaintiff was paid an annual base salary of $68,126.00 per year by Defendant.

47.     Plaintiff's salary remained consistent week to week throughout her employment with Defendant.

48.     As a Communication Specialist, Plaintiff routinely worked between 48 and 50 hours each week for Defendant.

49.     As a Communication Specialist, Plaintiff routinely worked between 8 and 10 hours per week in overtime for Defendant.

50.     Plaintiff was required to work hours in excess of her regular schedule one night per week.

51.     Plaintiff was required to work hours in excess of her regular schedule one weekend per month.

52.     Plaintiff's direct supervisor and management were aware of Plaintiff working in excess of 40 hours per week for Defendant.

53.     Since the inception of her employment with Defendant through the date of her termination, Plaintiff was never compensated one and one-half times her regular rate of pay for hours worked above 40 in a work week.

54.     Defendant used the flat number of 40 hours per week on Plaintiff's paycheck.

55.     Defendant subtracted time for holiday, sick, and vacation time used.

56.     Defendant did not keep accurate records of the overtime hours worked by Plaintiff.

57.     Plaintiff's hours of work may be evidenced, in part, by using Defendant's computer log in records, cell phone records, emails, text messages, calendaring system, social media login and post times, and other documents created with and on Defendant's computer systems and premises.

58.     Plaintiff followed Defendant's guidelines and supervision when fulfilling her job duties.

59.     During her employment with Defendant, Plaintiff was performing non-exempt work.

60.     Plaintiff was required to follow all company procedures and policies without any deviation.

61.     If Plaintiff was to deviate from any procedures or policies, she was required to first receive approval from Defendant.

62.     Plaintiff was required to seek approval from Defendant and supervisors for any decision she would make that might affect the company or contracts.

63.     Defendant knowingly and willfully violated the overtime provisions of the FLSA by misclassifying the position Plaintiff held, Communication Specialist, with Defendant, as exempt from the overtime provisions of the FLSA.

64.     Based on her duties, Plaintiff's position did not qualify for any of the overtime exemptions to the FLSA.

65.     During Plaintiff's employment with Defendant, Plaintiff's duties did not qualify for the administrative exemption under the FLSA.

66.     Plaintiff was not exempt under the administrative exemption.

67.     Plaintiff applied well-established techniques, procedures or specific standards of Defendant when performing her duties.

68.     Plaintiff was not permitted to exercise her discretion or use independent judgment with respect to matters of significance when performing her duties for Defendant.

69.     Plaintiff's primary duties included following the direct procedures of Defendant and supervisors when fulfilling her job duties.

70.     Plaintiff did not exercise discretion and independence in matters of significance when performing her job duties for Defendant.

71.     Plaintiff did not have authority to, nor did she formulate, affect, interpret, or implement management policies or operating practices of Defendant.

72.     Plaintiff did not have authority to, nor did she perform, work which substantially effects Defendant's operations.

73.     Plaintiff did not have authority to personally commit the Defendant to matters that had significant financial impact on Defendant.

74.     Plaintiff did not have the authority to waive or deviate from established policies and procedures without prior approval from Defendant.

75.     Plaintiff did not have authority to negotiate and personally bind the company on matters of significance.

76.     Plaintiff did not have the ability or responsibility to provide consultation or expert advice to management of the Defendant.

77.     Plaintiff did not have the ability or responsibility to investigate and resolve matters of significance on behalf of management for Defendant.

78.     Plaintiff did not have the authority to represent Defendant in handling complaints, arbitrating disputes, and resolving grievances.

79.     Plaintiff did not perform any quality control, nor did she work or develop any performance or procedural policies of Defendant.

80.     During Plaintiff's employment with Defendant, Plaintiff's duties as a Communication Specialist did not qualify for the executive exemption under the FLSA.

81.     Plaintiff did not supervise the equivalent of at least two or more full-time employees as part of her duties for Defendant.

82.     Plaintiff did not manage any employees for Defendant.

83.     Plaintiff did not set or adjust the rates of pay and hours of work for Defendant's employees.

84.     Plaintiff did not have the authority to hire or fire employees from Defendant.

85.    Plaintiff did not manage the enterprise or manage a customarily recognized department or subdivision of the Defendant.

86.    Plaintiff only met the salary requirement for the professional exemption.

87.    Apart from salary, Plaintiff did not meet any other requirement for the professional exemption.

88.    Plaintiff only met the salary requirement for the executive exemption.

89.    Apart from salary, Plaintiff did not meet any other requirement for the executive exemption.

90.    Plaintiff only met the salary requirement for the administrative exemption.

91.    Apart from salary, Plaintiff did not meet any other requirement for the administrative exemption.

92.    During her employment with Defendant as a Communication Specialist, Plaintiff routinely worked workweeks in excess of 40 hours in a week.

93.    Defendant never paid Plaintiff overtime wages for any hours Plaintiff worked in excess of 40 in a workweek.

94.    Upon information and belief, Defendant willfully and illegally classified Plaintiff as exempt from the overtime wage provisions of the FLSA.

95.    The job duties performed by Plaintiff as Communication Specialist are such that according to the provisions of the FLSA and the Code of Federal Regulations ("CFR"), Plaintiff should have been classified as a non-exempt employee and entitled to overtime pay for hours worked in excess of 40 in a workweek.

96.     Defendant has been the subject of previous litigation over misclassification of the exact position that Plaintiff held in 5:16-cv-00682-JSM-PRL in the United States Middle District of Florida, Ocala Division.

97.     Defendant knew or should have known that its former and current policies regarding payment of overtime wages as described herein violated the FLSA as they pertained to Plaintiff.

98.     Defendant knew or should have known that it misclassified Plaintiff as an exempt employee under the FLSA.

99.     As an employer, Defendant is responsible for the unlawful conduct and policies described herein, including the failure to comply with the provisions of the FLSA as applied to Plaintiff during the time she served as Communication Specialist.

100.    Defendant did not seek or rely upon the advice of a Department of Labor opinion letter with respect to Plaintiff's classification as an exempt employee.

101.    The actions of Defendant in deliberately failing to pay Plaintiff overtime wages were done for the purpose of enriching and benefitting Defendant.

102.    As a result of the actions of Defendant in not paying legally required overtime wages to Plaintiff, Plaintiff has suffered economic damages.

103.    Plaintiff has had to retain the services of Wilson McCoy, P.A. to recover her unpaid overtime and liquidated damages from Defendant, and she is required to pay Wilson McCoy, P.A. reasonable attorney fees for such services.

104.    Plaintiff received good performance evaluations for the year 2015, 2016, and 2017.

105.    In 2017, Plaintiff received a performance review which stated "Though Jennifer produces, her attitude towards this work is poor. The complaining about the responsibilities has become excessive, is troubling to Jennifer's coworkers and needs to stop."

106.    In 2017, Plaintiff received a performance review which stated "I do ask Jennifer to take a more positive approach to our shared responsibilities to member communication outside of the regular business day."

107.    Plaintiff repeatedly objected to the additional out of office work to her supervisor, Ms. Kathryn Gloria.

108.    Defendant had knowledge that Plaintiff objected repeatedly to the additional work which she was being instructed to do outside of normal business hours.

109.    When Plaintiff was hired, she had a disability diagnosis of Complex Regional Pain Syndrome ("CPRS") and Attention Deficit Hyperactivity Disorder ("ADHD").

110.    Plaintiff informed Defendant about this condition and her treatment needs at her time of hire.

111.    Plaintiff requested intermittent FMLA on or about January of 2017.

112.    Plaintiff's request for intermittent FMLA was granted.

113.    Plaintiff began to take intermittent FMLA for treatment of her medical conditions.

114.    Plaintiff began to be singled out by management for using FMLA.

115.    Management was upset at the amount of time that Plaintiff was taking off.

116.    Plaintiff was forced to forgo her regular work privileged and was given only two tasks each day in which she was permitted to work on.

117.    Plaintiff was forced to give hour by hour written reports of her activities.

118.    Plaintiff was forced to keep a running journal of all activities that she made.

119.    Plaintiff would receive consistent personal visits to her desk by management to check on her status.

120.    Plaintiff was treated differently than employees who were not utilizing FMLA.

121.    Plaintiff was embarrassed by management as a result of her use of FMLA.

122.    Plaintiff was accused of "excessive absenteeism" for her use of FMLA and ADA time.

123.    Plaintiff was made to feel that she was letting the department down as a result of her use of FMLA.

124.    Defendant required that Plaintiff pre-schedule all of her appoints for several months out.

125.    Plaintiff complied and pre-scheduled all of her appointments for several months out.

126.    Defendant then changed the dates and times that Plaintiff could attend appointments.

127.    Plaintiff objected to the changes as one of her doctors did not see patients on the day she was restricted to.

128.    Plaintiff was informed that her position had when she stopped "being productive" because she was "spending all of her time planning her next absence."

129.    Plaintiff was informed by Ms. Gloria that she needed to reschedule her FMLA appointments because of the companies needs during a hurricane.

130.    Plaintiff had to consistently object to the FMLA record keeping of Defendant.

131.    Plaintiff was accused of stealing time on Ms. Gloria on September 6, 2017.

132.    Plaintiff was retaliated against and forced to review nearly a thousand data entries for door card swipes to account for her hours.

133.    Plaintiff was given 9 hours to make the accounting and when she did not complete the work within the 9 hours she was ridiculed and threatened with unpaid suspension.

134.    Plaintiff consistently complained verbally and via email to Defendant's Vice President for Human Resources, Mr. Gregg Morrell.

135.    Plaintiff received no assistance or protection from Defendant's human resources department.

136.    Mr. Morrell admitted that Plaintiff had been given a "modified schedule" of work in the form of a task list because of her ADHD.

137.    Plaintiff never requested that Defendant provide her with a modified work list.

138.    Plaintiff consistently asked to be treated like every other employee.

139.    Plaintiff was qualified to perform her job duties.

140.    Plaintiff performed her job duties for several years without complaint.

141.    Plaintiff made a written complaint to management of Defendant on September 14, 2017 in which Plaintiff specifically raised concerns and claims of FMLA Interference, FMLA Retaliation, and Disability Discrimination.

142.    Plaintiff was terminated on December 12, 2017 for "lack of productivity, poor job performance, and unprofessional conduct."

143.    The reasons Defendant gave for Plaintiff's termination were manufactured by Defendant.

144.    Plaintiff filed a complaint for FMLA retaliation with the United States Department of Labor ("USDOL") on December 11, 2017, Filing number 2018-342-30388.

145.    The USDOL conducted an investigation and found four violations of the FMLA by Defendant.

146.    Defendant was found in violation of FMLA Discrimination, FMLA Record Keeping, Failure to Provide Eligibility Notice, and Failure to Provide Designation Notice.

147.    Plaintiff has had to retain the services of Wilson McCoy, P.A. to pursue damages related to the FCRA and FMLA, and she is required to pay Wilson McCoy, P.A. reasonable attorney fees for such services.

**COUNT I**
**VIOLATION OF THE OVERTIME PROVISIONS OF**
**THE FAIR LABOR STANDARDS ACT**

148.    Plaintiff re-alleges and incorporates herein the allegations contained in paragraphs 1 through 147, above.

149.    Plaintiff, as Defendant's employee, was entitled to be paid at the statutory rate of one and one-half times Plaintiff's regular rate of pay for those hours worked in excess of 40 hours per week.

150.    Plaintiff routinely and regularly worked weeks in excess of 40 hours per week for Defendant.  Defendant did not pay Plaintiff one and one-half times her regular rate of pay for the hours worked in excess of 40 in a workweek.

151.    Throughout the employment of Plaintiff, the Defendant has repeatedly and willfully violated Section 7 and Section 15 of the FLSA by failing to compensate Plaintiff at a rate not less than one and one-half times the regular rate at which she was employed for workweeks in excess of 40 hours.

152.    Defendant knew or should have known that Plaintiff was working more than 40 hours each week.

153.     As a result of Defendant's intentional, willful, and unlawful acts in refusing to pay Plaintiff one and one-half times her regular rate of pay for each hour worked in excess of forty hours per week throughout her employment, Plaintiff has suffered damages.

154.     Defendant's conduct was in reckless disregard of the overtime requirements of the FLSA.

155.     Defendant willfully violated the FLSA.

156.     Plaintiff is entitled to unpaid overtime and an equal amount as liquidated damages as a result of Defendant's violation of the FLSA.

WHEREFORE, Plaintiff demands a judgment against Defendant for unpaid overtime wages found to be due and owing; an additional amount equal to the unpaid overtime wages found to be due and owing as liquidated damages; prejudgment interest in the event liquidated damages are not awarded; a reasonable attorney's fee and costs; and such other relief as this Court deems just and equitable.

## COUNT II
## RETALIATORY DISCRIMINATION UNDER
## THE FAMILY MEDICAL LEAVE ACT

157.     Plaintiff re-alleges and incorporates herein the allegations contained in paragraphs 1 through 147, above.

158.     Plaintiff qualified for and used intermittent FMLA time for self-treatment.

159.     Plaintiff logged hours in the manner she was instructed to by Defendant.

160.     Plaintiff was treated differently as a result of her use of FMLA time.

161.     Plaintiff was made to feel ashamed by telling her that she was letting the team down.

162.    Plaintiff informed Defendant that they had not properly tracked or recorded her hours.

163.    Defendant made Plaintiff perform a review of all hours and all badge swipes made for the entire year.

164.    Plaintiff was given a short amount of time to do this and was subsequently yelled at, made to feel lazy, and threatened with unpaid suspension when she did not complete this undertaking within the 9 hours she was given.

165.    It was not Plaintiff's responsibility to review the hours that she gave Defendant for input accuracy.

166.    Plaintiff was terminated after lodging many complaints about her treatment and Defendant's improper calculation of used FMLA hours.

167.    Defendant violated the FMLA by discriminatorily retaliating against Plaintiff for her use of the FMLA and for insisting that her rights under the FMLA not be diminished.

168.    Defendant willfully violated the FMLA.

169.    As a result of Defendant's intentional and willful violation of the FMLA 29 U.S.C. § 2615(a), Plaintiff has suffered damages.

WHEREFORE, Plaintiff demands a judgment against Defendant for lost wages found to be due and owing; an additional amount found to be due and owing as liquidated damages; prejudgment interest in the event liquidated damages are not awarded; compensatory damages; a reasonable attorney's fee and costs; and such other relief as this Court deems just and equitable.

**COUNT III**
**DISABILITY DISCRIMINATION UNDER**
**THE FLORIDA CIVIL RIGHTS ACT**

170.    Plaintiff re-alleges and incorporates herein the allegations contained in paragraphs 1 through 147, above.

171.    Plaintiff suffered from the disability of ADHD and CPRS.

172.    Defendant was aware of Plaintiff's disability at her time of hire.

173.    Plaintiff was able to manage her disabilities with treatment.

174.    Plaintiff was able to perform the functions of her position without reasonable accommodation.

175.    Defendant violated the FCRA by discriminating against Plaintiff because of her disabilities.

176.    Defendant treated Plaintiff differently because of her disabilities.

177.    Defendant gave Plaintiff a diminished work schedule as a result of her disabilities.

178.    Defendant was made to feel bad by Defendant because of her disabilities and seeking treatment for them.

179.    As a result of Defendant's intentional and willful violation of the FCRA § 760.10(1), *Florida Statutes*, Plaintiff has suffered damages.

WHEREFORE, Plaintiff demands a judgment against Defendant for back wages found to be due and owing; compensatory damages; damages from pain and suffering; a reasonable attorney's fee and costs; and such other relief as this Court deems just and equitable.

## COUNT IV
## RETALIATION UNDER
## THE FLORIDA CIVIL RIGHTS ACT

180.    Plaintiff re-alleges and incorporates herein the allegations contained in paragraphs 1 through 147, above.

181.    Plaintiff suffered from the disability of ADHD and CPRS.

182.    Defendant was aware of Plaintiff's disability at her time of hire.

183.    Plaintiff was able to manage her disabilities with treatment.

184.    Plaintiff was able to perform her job duties without accommodation.

185.    Plaintiff filed a charge for disability discrimination with the EEOC and FCRA pursuant to the 2018 workshare agreement between the two agencies on November 27, 2017.

186.    Plaintiff was terminated on December 12, 2017 for the pretextual reason of "lack of productivity, poor job performance, and unprofessional conduct."

187.    Plaintiff was terminated 15 days after she filed an EEOC charge.

188.    Plaintiff contacted the EEOC on or about December 12, 2017 and let them know that she had been terminated, asking that they look into that as well.

189.    Defendant violated the FCRA by retaliating against Plaintiff because of her charge.

190.    As a result of Defendant's intentional and willful violation of the FCRA § 760.10(1), *Florida Statutes*, Plaintiff has suffered damages.

WHEREFORE, Plaintiff demands a judgment against Defendant for back wages found to be due and owing; compensatory damages; damages from pain and suffering; a reasonable attorney's fee and costs; and such other relief as this Court deems just and equitable.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury on all issues so triable.

DATED this 15th day of August, 2019.

Respectfully submitted,


/s/ Paul Sutherland
Paul L. Sutherland, Esq.
Florida Bar No. 1008093
Nathan McCoy, Esq.
Florida Bar No. 676101
WILSON MCCOY, P.A.
Point 100 Building,
100 E. Sybelia Ave, Ste. 205
Maitland, Florida 32751
Telephone: (407) 803-5400
Facsimile: (407) 803-4617
E-Mail:
psutherland@wilsonmccoylaw.com
nmccoy@wilsonmccoylaw.com
ccochrane@wilsonmccoylaw.com

**ATTORNEYS FOR PLAINTIFF**

## **VERIFICATION**

Under penalties of perjury, I declare that I have read the above Pleading and that the facts stated in it are true to the best of my personal knowledge and belief.

_Jennifer Mielke_
JENNIFER MIELKE

STATE OF FLORIDA)

COUNTY OF ~~ORANGE~~) Sumter

The foregoing instrument was acknowledged before me this 13th day of August , 2019, by JENNIFER MIELKE, who is personally known to me or who has produced Florida Driver License as identification, and who did take an oath.

_____
Notary Public

My Commission Expires: November 03, 2020

Seal:

SANDY BROWN
NOTARY
My Comm. Expires
November 03, 2020
No. GG 44926
PUBLIC
STATE OF FLORIDA

Page 21 of 21